## APPEAL OF FRANCIS A. MILLER, EXR.

[ESTATE OF PHILIP DEVORE, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF BEDFORD COUNTY.

Argued May 14, 1889—Decided May 27, 1889.
[To be reported.]

(a) Albright and Miller, as executors, filed a joint account, and upon distribution $3,000 of the balance was directed to be retained by the executors "and safely invested" for the payment of legacies to that amount payable as the six legatees entitled became of age. This balance was left in the hands of Albright.

(b) Afterwards, a second account was filed, showing a separate liability of the accountants, and after confirmation thereof a joint judgment was entered against them on a transcript from the Orphans' Court, protective of persons interested in the balance shown by this account, who were subsequently paid in full.

Statement of Facts.

(c) Albright becoming insolvent made an assignment; Miller paid the six legatees their legacies, though the fund had never reached his hands, and out of the assigned estate of Albright was awarded a dividend upon the joint judgment referred to, which was presented for his benefit under a claim as of subrogation.

(d) Subsequently, upon the petition of residuary legatees, alleging that there was a balance of the estate undistributed, an auditor was appointed to find the facts and state an account; the auditor reported an account and decree charging Miller, in favor of the residuary estate, with the dividend received and with the interest on the $3,000 fund, which report was confirmed.

1. It was error to charge Miller with the dividend received from the assigned estate of Albright; the money was not due to the estate of his decedent, nor awarded to it, but to Miller, and it was not to be treated as assets of said estate.

2. The order directing the investment of the $3,000, imposed no duty upon Miller for the benefit of the residuary estate, but was made for the benefit of the six legatees, then under age; and, as Miller had paid said legatees, he had substantially complied with the order, and it was error in this proceeding to charge him with the interest on the fund.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 284 January Term 1889, Sup. Ct.; court below, number and term not given.

In March, 1879, Mrs. Rebecca Valentine et al., children and grandchildren of Philip Devore, late of Londonderry township, deceased, presented their petition representing that said Philip Devore died in 1868, having made his last will and testament, duly admitted to probate, of which will Josiah Miller and Jacob L. Albright were the executors; that said executors had filed two accounts, but that said accounts did not entirely settle and close the estate of said testator, and there were moneys in the hands of said executors, or should be, which ought to be distributed and paid to the legatees; praying for a citation, etc.

An answer was filed by Josiah Miller setting out that when the first account was filed he unfortunately joined with his co-executor therein; and that all the balance not paid out was then in the hands of said co-executor; that although the entire balance which was set apart for the payment of sundry legacies to persons, when and as they should reach the age of twenty-one years, was in the hands of his co-executor, the respondent had been compelled to raise money and pay them;

and that since the filing of his last account, he had received no money or assets of the estate of the decedent.

The answer of J. L. Albright set out that after the filing of the two accounts, which had been duly confirmed and distribution fully made thereon, he was discharged from the trust, and the business of the estate was then solely in the hands of his co-executor, Josiah Miller; that all moneys of said estate had been fully accounted for in said two accounts, and that since that time the respondent had not received one dollar of the estate of the decedent.

On June 2, 1879, *Mr. M. A. Points* was appointed auditor, "to find and report the facts with an opinion on the law." On October 9th, 1879, on motion of the petitioners' attorneys, the powers and duties of the auditor were enlarged "so that he be required to state an account for the said respondents," and make report of the same.

The facts developed in the several hearings before the auditor, as shown by his several reports, so far as material to this case, were as follows:

The will of Philip Devore, dated January 1, 1868, was admitted to probate on February 6, 1868, and letters testamentary issued on the same day to Josiah Miller and J. L. Albright.

The decedent, in 1867, had sold certain real estate to J. L. Albright for $3,000, taking notes at long periods, with the interest added to each instalment, so that the notes would not bear interest except from maturity. These notes went into the hands of J. L. Albright as assets of the estate.

By the will six legacies of $500 each were given to grandchildren, then quite young, payable to them on reaching majority. There was evidence that the notes referred to were intended to meet these legacies.

On October 16, 1869, the executors filed a joint account, confirmed November 16, 1869, showing a balance in their hands of $5,818.14. This account was referred to Mr. S. L. Russell, as auditor, for distribution. In his report the auditor ascertained the net balance, and directed: "From this sum of $5,740, deduct the amount of the special legacies, $3,000, which is to be retained by the executors and safely invested for the legatees, $3,000." The report was confirmed February 14,

1870, and distribution decreed accordingly. The residue, after making the deduction, was paid promptly to distributees.

On October 26, 1871, the executors filed separate supplemental accounts, which were confirmed November 11, 1871, and referred to the same auditor, Mr. S. L. Russell. The amounts in the hands of the respective executors were stated in the auditor's report separately, thus: "Miller, $2,851,03; Albright, $2,018.97;" showing total amount for distribution $4,870.

Early in 1874, Mr. Albright became involved. On May 11, 1874, a certificate from the Orphans' Court was filed in the Common Pleas showing a balance in the hands of Josiah Miller and J. L. Albright, as executors of Philip Devore, deceased, of $4,870; a scire facias was issued thereon, and judgment obtained soon afterward. There was evidence, however, that in fact the amount for which this judgment was obtained had all been paid to the parties in interest, except a balance of $307.90, payable by Miller and paid by him in 1876.

On July 20, 1874, J. L. Albright made an assignment for the benefit of creditors. Upon petition afterwards presented, an order was made October 21, 1875, discharging him as one of the executors of Philip Devore deceased; and in 1877 his assigned estate was distributed by Mr. John H. Jordan, as auditor, before whom the joint judgment above referred to was presented on behalf of Josiah Miller, now the sole executor, and a dividend of $192.61 awarded thereon and received by Miller.

When the final report of the auditor was made, the six legatees had been paid their legacies of $500 each, and they had assigned them with the interest accrued thereon to the estate of Josiah Miller, who had died pending the proceedings.

Upon the contention made before him upon the foregoing facts, the auditor charged the estate of Miller with the dividend of $192.61, hereinbefore referred to, and interest amounting to $323.39, and also with $1,714.49, interest on the six legacies, and interest thereon, amounting to $2,140.88, and recommended a decree awarding said sums to the residuary legatees.

Exceptions filed by Francis A. Miller, executor of Josiah Miller, deceased, to the report of the auditor were dismissed by the court, BAER, P. J., the report confirmed, and a decree en-

tered as recommended, when the exceptant took this appeal, specifying that the court erred:

1. In charging the estate of Josiah Miller with $192.61, dividend and interest thereon received from assigned real estate of Jacob L. Albright, in all $323.39.

2. In charging the estate of Josiah Miller with $1,714.99, interest on the six special legacies, and $425.89, interest thereon, in all $2,140.88.

3. In appropriating the interest on the special legacies, $2,140.88, if charged against the executors, to the general or residuary legatees of Philip Devore, deceased, and in refusing to appropriate the same to the estate of Josiah Miller, deceased, as all of said special legacies and all interest thereon had been assigned to Miller's estate.

*Mr. John M. Reynolds* and *Mr. John Cessna*, for the appellant.

*Mr. J. H. Longenecker* (with him *Mr. A. L. Russell* and *Mr. Thomas Armstrong*,) for the appellees.

OPINION, MR. JUSTICE WILLIAMS:

The first assignment of error must be sustained. The money to which it relates was not due to the estate of Philip Devore but to Miller, for money which he had paid for his co-executor. The certificate from the Orphans' Court on which the lien had been entered in the Common Pleas was for a balance shown in the hands of the executors by their second account, which balance, so far at least as Albright was concerned, had been fully paid. When Miller presented it to the auditor who was charged with the distribution of the proceeds of the assigned estate of Albright, and asked a pro rata allowance upon it, he treated himself as subrogated to the rights of the plaintiffs, who had been paid in full, and was himself the claimant. It may be that the auditor would have been justified in rejecting this claim altogether, but he did not. He awarded to Miller his proportionate part of the fund as a creditor of Albright. The money was not due to Devore's estate, nor awarded to it, but to Miller, and it is a mistake to treat it as assets of Devore in the hands of Miller.

The question raised by the second assignment is more formidable. The first account of the executors of Devore was filed as a joint account, on October 16, 1869, and showed a balance in their hands of $5,818.14. An auditor was appointed to make distribution of this sum who reported a recommendation that $3,000 should be set apart to pay six specific legacies of $500 each, and "safely invested for the legatees;" and that the balance should be distributed in accordance with a table submitted with the report. Final confirmation of this report was made on February 14, 1870, and distribution ordered in accordance therewith. The duty to see to the safe investment of the $3,000 for the legatees, was by the decree of confirmation imposed upon both the executors. The decree was not literally obeyed, but the legatees have been fully paid by Miller. The residuary legatees are now seeking to charge Miller with the interest which the fund would have produced, if it had been invested at the date of the decree and kept constantly at interest until the first legatee came of age in August, 1874, and then upon the several balances left due after the successive payments had been made, to January, 1884, when the last legatee came of age. Upon the total of interest so accumulated they charge interest to the date of the decree in March, 1888. If Miller had been in possession of the fund, and had been able to keep it constantly at interest, it might have earned for the benefit of the residuary legatees, something like the amount thus claimed; but it is clear from the testimony, and we do not understand it to be denied, that the money thus set apart was mainly if not wholly in the hands of Albright, the co-executor, when the order was made, and so remained until he became insolvent, and was lost in great part by his failure.

We are then to inquire into the effect of the order of February 14, 1870, requiring the investment of $3,000 for the payment of the six legatees. It was made for the protection of those legatees. In letter and in spirit it looked to a provision for the prompt payment of those objects of the testator's bounty, as they severally came of age. It was not intended to increase the residuary estate by the accumulation of interest through a long series of years, nor was such a purpose fairly within the power of the Orphans' Court. The proceeding was one for making distribution. The recommendation of the au

ditor was, as we have seen, intended to secure the payment of the six legacies, and the decree of confirmation did not enlarge its scope. It became the duty of Miller, therefore, as well as of Albright, to see that these legacies were paid as they fell due, and the fact that he allowed the fund to remain in the hands of his co-executor and that it was lost by his failure, cannot relieve him from the obligation to pay. This obliga-tion he recognized and has, at considerable loss to himself, dis-charged. He has made amends for his failure to invest the money with which to pay these legacies, by paying them out of his own pocket, and has thus discharged the duty imposed upon him by the order, not in accordance with its terms, but with fidelity to its object.

The legatees, who were the objects of solicitude to the audi-tor and the Orphans' Court, are not complaining and have no reason to complain. They are fully paid. This proceeding is by the residuary legatees, who seek to charge Miller with more than two thousand dollars of interest which it is conceded he never received, but which it is alleged it was his duty to ac-cumulate for them under the order of February 14, 1870. But the residuary legatees were not the objects of that order. The specific purpose in view was security for the six legatees, and the court made distribution from time to time to the resid-uary legatees, recognizing their right to payment as fast as it could be made. They have no claim upon Miller by reason of the order to invest, because the investment was directed for a specific purpose in which they were not interested, and which has been fully met. His liability to them must depend upon his general liability as executor, and the fact that he joined in the first account with Albright; and, if it is true, as asserted in the paper book of the plaintiff in error, that every dollar of the assets which came to the hands of the executors, except the uncollected notes of Albright given to Devore in his lifetime, has been accounted for, his general liability has been fully discharged. But our question relates only to his lia-bility for the interest upon an investment that was never made, though directed for a special purpose to which the residuary legatees were strangers. We hold that he is not liable by rea-son of the order of February 14, 1870, because that order im-posed no duty on him relating to or for the benefit of the

residuary legatees, but was made for the benefit and protection of the six legatees who were, at that time, under age, and because that order has been substantially obeyed by the actual payment in full of each of said legatees as he or she became entitled to payment. The purposes of the order having thus been fully met, the liability of the executor, Miller, to the residuary legatees, must depend not on the order for investment, which is functus officio, but on the general principles regulating the liability of executors. If Miller has not fully accounted, or if any recognized basis of liability exists, his liability must be made to appear in the ordinary manner.

The second assignment of error is sustained. The third necessarily follows the second.

> The decree of the Orphans' Court is reversed and record remitted.